IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The Estate of Latoya Nicole Valentine, by and through Debra grate, Personal Representative and Debra Grate, in her individual capacity,<br><br>Plaintiffs,<br><br>vs.<br><br>The State of South Carolina, the Office of the Governor, Henry D. McMaster, Nimrata "Nikki" Haley, Joshua Baker, Christian Soura, the South Carolina Department of Health and Human Services, the South Carolina Department of Disabilities and Special Needs, the Pickens County Disabilities and Special Needs Board, Mary Poole, Patrick Maley, Lois Park Mole, Susan Beck, Beverly Buscemi, Stanley Butkus, Kathi Lacy, William Barfield, Thomas Waring, Robert Kerr, William Danielson, Elaine Thena, John Owens, and Diane Anderson,<br><br>Defendants. | C/A No. 3:18-00895-JFA<br><br><br><br><br><br><br><br>**MEMORANDUM OPINION & ORDER** |

1

This matter is currently before the court on Defendants the Department of Disability and Special Needs ("DDSN") and Diane Anderson's respective motions to reconsider[1]. (ECF Nos. 257 & 262). Defendants seek to have this court alter or amend its previous order filed May 24, 2021 (the "Order") wherein this court adjudicated several motions for summary judgment. (ECF No. 249). Having been fully briefed, these motions are ripe for review.

I.     FACTUAL AND PROCEDURAL HISTORY

The relevant factual and procedural history is outlined in the court's previous order at issue and is incorporated herein by reference. (ECF No. 249). By way of brief recitation, the Order granted six defense motions for summary judgment in full; granted in part and denied in part defendant Anderson's motion for summary judgment; and denied Plaintiff's motion for partial summary judgment in full. The net effect of this Order was the dismissal of all defendants except Anderson. Additionally, several claims against Anderson were also dismissed.

II.     LEGAL STANDARD

As motions to reconsider are not expressly contemplated by the Federal Rules of Civil Procedure, the Court will treat these motions as ones brought pursuant to Rule 54(b).

Under Rule 54(b), any order that adjudicates fewer than all claims "may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P.

---

[1] The Court addressed Plaintiff's separate motion to reconsider (ECF No. 258) in an independent order. However, because the two instant motions are interrelated, the court finds it prudent to adjudicate them both here.

54(b). However, this discretion is not limitless as interlocutory rulings are treated as the law of the case. *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). "Thus, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (cleaned up).

"However, a motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome." *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017). "Nor should such a motion be used to raise new arguments or evidence that could have been raised previously." *Id.*

### III. ANALYSIS

#### A. DDSN's Motion

DDSN seeks to have this court modify the Order by deleting the following single sentence on p. 23: "Thus, PCDSNB appears to be completely controlled by an agency of the State [referring to DDSN] and is thus an extension of the State itself." For context, that sentence appears in the below excerpt in which the court was tasked with determining whether Defendant Anderson was employed by an arm of the state and thus "acting under color of state law":

> It appears that PCDSNB is an entity separate from the state agencies of DDSN or DHHS but is sufficiently intertwined so as to constitute an arm of the state for purposes of a §1983 claim. PCDSNB, like all other county boards of disabilities and special needs, is a public entity created solely by statutory action. S.C. Code Ann. § 44-20-375. It is charged with "the administrative,

planning, coordinating, and service delivery body for county disabilities and special needs services funded in whole or in part by state appropriations to the department or funded from other sources under the department's control." S.C. Code Ann. § 44-20-385. Additionally, it is required to "represent the best interest of persons with intellectual disability, related disabilities, head injuries, or spinal cord injuries to the public, public officials, and other public or private organizations." *Id*. Thus, PCDSNB appears to be completely controlled by an agency of the State and is thus an extension of the State itself. Accordingly, Anderson was "acting under color of state law" while employed as house manager at Jewell Home.

(ECF No. 249 at 22-23)(emphasis added).

DDSN avers that this statement is factually and legally incorrect and thus constitutes a clear error causing manifest injustice. Essentially, DDSN admits that is has, pursuant to statute, some degree of authority over county disability boards such as PCDSNB.[2] However, DDSN attests that it does not "completely control" county disability boards. One example cited by DDSN is that county disabilities boards make their own employment decisions. S.C. Code Ann. § 44-20-385(5).

DDSN argues that modification or deletion of this sentence will not change the result of the Order in any way. Instead, DDSN seeks this amendment based on the possibility that if that language were to remain unchanged, it could give rise to claims that DDSN is effectively liable under *respondeat superior* for any acts committed by county boards and their employees. A prospect which DDSN claims is especially grave given the pending parallel state court action arising out of the same occurrences at issue here.

---

[2] For example, DDSN must approve a county disability board seeking "state or federal funds administered by state agencies other than" DDSN, or from other governmental or private sources, and county disability boards are explicitly barred from seeking funds "directly from the General Assembly." S.C. Code Ann. § 44-20-380(C).

4

Anderson, in response, does not contest the deletion of this singular sentence. However, Anderson does object to DDSN's reasoning that "if Ms. Anderson acted as an employee of a public entity, as the Court has held and as state law provides, she was acting under color of state law, and can be held liable under Section 1983 without the need for a holding with regard to the degree of control DDSN exercises over county boards." (ECF No. 257, p. 3). DDSN concedes in its Reply brief that such a statement was unnecessary and DDSN only needed to argue that since PCDSNB was a public entity, it was at least possible, although not inevitable, for Defendant Anderson's actions to have been state action. Anderson's objection thus appears to be geared more towards Anderson's own motion for reconsideration discussed below in which she seeks to have this Court determine that she was not acting under color of state law.

Plaintiff also objects to DDSN's motion. Specifically, Plaintiff argues that "DDSN has asked this Court to modify its order ruling the PCDSNB is an agency of the State." (ECF No. 266). As DDSN points out, "Plaintiffs' response in opposition completely misapprehends the issue raised in DDSN's motion." (ECF No. 269, p. 3). Plaintiff devotes a majority of her brief explaining the degree of control DDSN exercises over county boards such as PCDSNB in an effort to have this court maintain its conclusion that PCDSNB is an arm of the state for purposes of §1983 liability. Plaintiff's arguments miss the mark. DDSN does not dispute that it has some degree of control over PCDSNB or that PCDSNB cannot be considered an arm of the state within a § 1983 action. Instead, DDSN simply attests that DDSN does not exercise "complete control" over PCDSNB and a determination

as to the amount of control exercised over PCDSNB is not necessary to the resolution of any issue in the present case.

Accordingly, this court agrees that it erred in stating that "[t]hus, PCDSNB appears to be completely controlled by an agency of the State and is thus an extension of the State itself." However, the court declines to simply delete this sentence with no other amendment to the Order. Instead, the court will amend the Order to state: "Additionally, certain state agencies exercise some control over county boards such as PCDSNB pursuant to state statutes. Therefore, PCDSNB can be considered an extension of the State itself." The following excerpt shows this change with the deleted text stricken through and the new text underlined.

> It appears that PCDSNB is an entity separate from the state agencies of DDSN or DHHS but is sufficiently intertwined so as to constitute an arm of the state for purposes of a §1983 claim. PCDSNB, like all other county boards of disabilities and special needs, is a public entity created solely by statutory action. S.C. Code Ann. § 44-20-375. It is charged with "the administrative, planning, coordinating, and service delivery body for county disabilities and special needs services funded in whole or in part by state appropriations to the department or funded from other sources under the department's control." S.C. Code Ann. § 44-20-385. Additionally, it is required to "represent the best interest of persons with intellectual disability, related disabilities, head injuries, or spinal cord injuries to the public, public officials, and other public or private organizations." *Id*. ~~Thus, PCDSNB appears to be completely controlled by an agency of the State and is thus an extension of the State itself.~~ <u>Additionally, certain state agencies exercise some control over county boards such as PCDSNB pursuant to state statutes. Therefore, PCDSNB can be considered an extension of the State itself</u>. Accordingly, Anderson was "acting under color of state law" while employed as house manager at Jewell Home.

The Clerk is ordered to replace the current version of the Order with an Amended version including the modified language above.[3]

This amendment does not change the Order's ultimate conclusions or other holdings in any way. This amendment is meant only to clarify that DDSN may possess some authority over PCDSNB but does not "completely control" PCDSNB. This court declines to opine as to the precise level of control DDSN may exert over county boards as such a determination is unnecessary to the ultimate resolutions of the claims at issue.

**B. Anderson's Motion**

Anderson's motion to reconsider seeks to have this court alter its conclusion that Anderson was acting under color of state law while interacting with Valentine[4]. Anderson asserts these arguments here because the Order focused on PCDSNB's status as an arm of the state and not on the precise nature of Anderson's actions when determining whether Anderson was acting under color of state law. Essentially, Anderson avers that any actions complained of, such as slapping in the face, pulling hair, or verbally abusing, were private actions attributable only to Anderson individually and not to the state through her employer. *See Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 623 (D.S.C. 2011), *aff'd,* 482 F. App'x 759 (4th Cir. 2012)("The 'state action' and 'color-of-state-law' requirements exclude claims for 'merely private conduct, no matter

---

[3] This amended order will also correct a scrivener's error on page 32 wherein Valentine was identified erroneously instead of Grate in refence to a phone call with Anderson.

[4] Anderson's various arguments are dispersed between her motion to reconsider (ECF No. 262) and her response to DDSN's motion to reconsider (ECF No. 261). They are considered together here.

7

how discriminatory or wrongful,'")(citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)).

Anderson does however agree that "as a public entity pursuant to section 44-20-375(D), when PCDSNB acts as an '*agency*,' the actions of the *agency* occur under color of state law. (*See* Dkt. 257 at 3) (emphasis added) But only actions of the board operating as a body are definitively the actions of PCDSNB as an 'agency.' *See* § 44-20-385." (ECF No. 261, p. 3). Thus, Anderson argues that "'private conduct' by a government employee can take place which does *not* occur under color of state law, thus resulting in a situation where, as in the instant matter, legally viable state court tort claims may exist but no section 1983 claim can be brought." (ECF No. 261, p. 3).

Anderson utilizes the following hypotheticals to illustrate her point:

> Thus, when a deputy sheriff uses excessive force in the course of making an arrest a section 1983 claim premised upon the Fourth Amendment will lie because the deputy sheriff is clothed with the authority of state law to make the arrest. If the same deputy stopped, wholly in the absence of probable cause or reasonable suspicion, the car of his ex-girlfriend's new boyfriend to intimidate and dissuade the new boyfriend from pursuing the relationship, a section 1983 claim for an unreasonable seizure could nonetheless be brought because, despite the personal nature of the deputy's actions, from the victim's perspective the deputy was "clothed with the authority of state law" which required the victim to pull over when he saw blue lights. In such a hypothetical, the negative conduct was made possible only because the deputy was "'exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."
>
> But if a records clerk at the sheriff's office where the same hypothetical deputy works gets into an argument with a member of the public and slaps that person, has a Fourteenth Amendment liberty deprivation occurred? In such a circumstance, an employee of a state agency has certainly engaged in arguably wrongful conduct for which a state tort action may lie,

8

but nowhere in such a scenario may it be said the action occurred "under color of state law." . . .

Quite simply, the hypothetical records clerk has no authority to compel action from a member of the public in the same manner as a law enforcement officer. The fact she works for a public entity does not automatically mean all her actions while at work take place "under color of state law."

(ECF No. 261, p. 5-6)(internal citations omitted).

Anderson's argument is akin to analyzing whether an employee was acting within the course and scope of her employment in order to bind the master to the actions of a servant. The court does not necessarily disagree with Anderson's reasoning, but does disagree with the application of that reasoning in this case.

When discussing the definition of "acting under color of state law," the Supreme Court has stated:

To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor. State employment is generally sufficient to render the defendant a state actor. It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.

*West v. Atkins*, 487 U.S. 42, 49–50 (1988)(cleaned up).

Here, Anderson attempts to analogize herself to the hypothetical records clerk with no authority to physically compel action from a member of the public. However, Anderson fails to acknowledge that she was employed by PCDSNB and charged with caring for Valentine while at Jewell Home. Thus, Anderson is more analogous to the deputy sheriff

9

who utilizes excessive force when carrying out his official duties. Anderson, along with other staff of PCDSNB, was entrusted with providing for Valentine and ensuring basic needs were met.[5] Grate avers, *inter alia*, that Anderson slapped Valentine in the face and drug her by her hair into the bathroom in an effort to get Valentine to shower. At all relevant times, Anderson was acting in her official capacity as house manager and thereby cloaked in the authority of the PCDSNB which operated Jewell Home. Accordingly, Anderson was acting under color of state law. Thus, the court disagrees that "only actions of the board operating as a body are definitively the actions of PCDSNB as an agency." *See West v. Atkins*, 487 U.S. 42, 49–50 (1988)("State employment is generally sufficient to render the defendant a state actor. . . . Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

The Court would hasten to add that not all of Anderson's actions can *per se* be attributed to her employer or otherwise considered actions of the state itself. For instance, if Anderson were to slap an individual while at the park on a Saturday off from work because this individual had insulted her personally, it could not reasonably be argued that Anderson was acting under color of state law. Such an action would be purely private. However, while working as a house manager at Jewell Home and attempting to gain a

---

[5] County boards are statutorily required to "represent the best interest of persons with intellectual disability, related disabilities, head injuries, or spinal cord injuries to the public, public officials, and other public or private organizations." S.C. Code Ann. § 44-20-385. Additionally, level II community training homes such as Jewell Home provide daily living assistance with toileting, bathing and dressing, as well as eating and medications.

consumer's compliance with Jewell Home objectives, Anderson was clothed in authority from PCDSNB and thus acting under color of state law. Plaintiff has alleged, and presented evidence to support, that Anderson was acting as the Jewell Home house manger employed by PCDSNB and working to further PCDSNB interests. Accordingly, Anderson has failed to show a clear error of law that would necessitate an amendment of the Order.

Anderson also "urges that claims of verbal abuse are not actionable under section 1983 and respectfully requests that summary judgment be granted to her regarding all such claims." (ECF No. 262, p. 4). Anderson failed to assert this argument within her motion for summary judgment. Motions to reconsider should not "be used to raise new arguments or evidence that could have been raised previously." *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017). Thus, the Court declines to consider Anderson's argument on verbal abuse here as it was raised for the first time in her motion for reconsideration. Should this case proceed to trial, Anderson may raise these concerns prior to the pretrial conference.

## IV.   CONCLUSION

For all of the reasons stated above, DDSN's motion to reconsider (ECF No. 257) is granted and Anderson's motion to reconsider (ECF No. 262) is denied.

IT IS SO ORDERED.

August 5, 2021                                             Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge