IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The Estate of Latoya Nicole Valentine, by and through Debra Grate, Personal Representative and Debra Grate, in her individual capacity, | C/A No. 3:18-00895-JFA |
| Plaintiffs, | |
| vs. | **MEMORANDUM, OPINION, AND ORDER** |
| The State of South Carolina; the Office of the Governor; Henry D. McMaster; Nimrata "Nikki" Haley; Joshua Baker; Christian Soura; the South Carolina Department of Health and Human Services; the South Carolina Department of Disabilities and Special Needs; the Pickens County Disabilities and Special Needs Board; Mary Poole; Patrick Maley; Lois Park Mole; Susan Beck; Beverly Buscemi; Stanley Butkus; Kathi Lacy; William Barfield; Thomas Waring; Robert Kerr; William Danielson; Elaine Thena; John Owens; and Diane Anderson; | |
| Defendants. | |

In more than 35 years as a Federal District Court Judge, the undersigned has found it necessary to formally sanction an attorney for their own conduct in only two occasions. This is the third.

1

This matter is before the Court for a determination as to whether Plaintiff's counsel, Patricia Harrison of the Patricia Logan Harrison Law Office, and William Bouton of the Mitchell Law Firm, LLC (collectively "Counsel") should be sanctioned for their actions over the course of this lawsuit. For the reasons set forth below, the Court finds that William Bouton's actions do not warrant sanctions. However, Patricia Harrison's actions may not go unchecked and she is therefore subject to formal sanctions.

## I.    FACTUAL AND PROCEDURAL HISTORY

The factual background of those events giving rise to this action are more thoroughly explained in this Court's order adjudicating the parties' motions for summary judgment (the "Summary Judgment Order"). (ECF No. 273). Further, this Court previously issued an Order to Show Cause as to why Plaintiff's Counsel should not be sanctioned (the "Show Cause Order"), which is attached to this order and further incorporated herein by reference. (ECF No. 288). The Show Cause Order explained the Court's concerns with Counsel's actions in this matter and invited a response from all parties. Additionally, Counsel was given an opportunity to respond to any matters raised by any other party and further present argument in person before the Court. Having received full briefing and oral argument, this matter is ripe for review.

## II.    LEGAL STANDARD

The authority and standards for imposing sanctions, namely Federal Rule of Civil Procedure 11, the inherent authority of the court, and 28 U.S.C. § 1927, are fully articulated in the Show Cause Order. Because that order has been incorporated here, a recitation of those standards is unnecessary.

2

### III.    DISCUSSION

The Court's concerns were explained thoroughly in the Show Cause Order. Specifically, the purpose of the Show Cause Order was "to focus on two specific areas of concern. First, it appears as though Plaintiff's theory that [Latoya] Valentine's death resulted from a hyponatremia-induced episode lacks any foundation and seems completely concocted by Counsel. Secondly, Counsels' decision to not only name 23 separate Defendants, but then to relentlessly pursue litigation against them for nearly three years, appears unreasonably superfluous and vexatious." (ECF No. 288).

The Court elaborated on these concerns in depth within the Show Cause Order and therefore a complete recitation of the grounds and authority for sanctions is unnecessary here. Instead, the purpose of this order is to address specific arguments made in response to the Show Cause Order and formally issue the appropriate sanctions.

#### A.  Newly Raised Conduct

As an initial matter, attorneys for several defendants originally asserted that Counsel may have intentionally submitted altered documents to the court, including a summons issued in this court and a copy of the release submitted to the state court. Upon reviewing the response and explanation for the inadvertent submission of these documents, defense counsel chose not to pursue these allegations any further. Likewise, this Court accepts Counsel's explanation and finds no further action on those specific matters is warranted.

#### B.  William Bouton

Bouton suggests, and no party disputes, that Bouton and Harrison should be weighed according to their own respective actions over the course of this lawsuit and not

as a joint enterprise. In response to the Show Cause Order, Bouton avers that his current firm and its predecessor made initial contact with Plaintiff Grate in originating this action. Thereafter, Bouton engaged the services of Harrison as co-counsel. Harrison was recommended as an attorney with immense experience handling matters similar to those at issue here—namely those involving mistreatment of Medicare and Medicaid recipients.

After Harrison was retained, Bouton apparently took a backseat, and his tasks became mainly "administrative" and akin to "paralegal work." He avers that the substantive decisions as to which defendants should be named and how discovery should proceed were handled primarily by Harrison. He relied on her knowledge and experience throughout this action. He attests that he did take an active role at mediation which resulted in a favorable settlement of all claims. However, he believes that the actions which have drawn scrutiny by this Court are mainly attributable to Harrison.[1] No party contested his assertions.

Based on the record before the Court, it does not appear that Bouton has engaged in actions which warrant sanctions. This Court has continually expressed concern over the large number of defendants named in this suit, the lack of discovery, and failure to establish causal connections to substantiate Plaintiff's claims. The substantive decisions on these matters were apparently made by Harrison with Bouton's acquiescence. Given that there is no indication of bad faith or malicious intent on Bouton's behalf, the Court finds that his specific actions do not warrant sanctions. Bouton was remorseful in his responses and statements to the Court that this litigation caused strife. Accordingly, the Court is confident

[1] Bouton does not imply or concede that any of these actions are sanctionable, only that the actions addressed by the Court were primarily handled by Harrison.

4

that Bouton will caution his compliance in future matters and sanctions on his behalf are unnecessary.

C. <u>Patricia Harrison</u>

In response to the Show Cause Order, Harrison denies she engaged in any actions which would warrant sanctions and instead avers that her conduct was completely justified. As explained below, the Court disagrees.

1. <u>Vexatious Multiplication of Litigation</u>

In response to the Court's concern that Plaintiff unreasonably multiplied litigation in a vexatious manner by naming 18 individual defendants in addition to numerous state agencies, yet pursuing virtually no discovery to substantiate the claims against them, Harrison broadly avers that she conducted "hours and weeks and months of discovery." (ECF No. 319, p. 5). It appears that Harrison's definition of discovery includes information gleaned from other wholly unrelated matters more than a decade ago.

Harrison boldly asserts that she came to this lawsuit with years of knowledge of various bad acts taken by the defendants which all provide a basis for their presence in this lawsuit without the need for further discovery. As an example, Harrison points to depositions of defendant Kathi Lacy and Stan Butkus which were taken in 2009 in a different lawsuit. Harrison avers that in those depositions she learned that defendant Lacy was responsible for tracking abuse and neglect across the state. Therefore, Harrison did not feel any further discovery as to this defendant was necessary. Such a conclusion shows a misconception of the facts and evidence needed to prove the claims at issue in this suit. Under Harrison's proposed rationale, Lacy could be hauled into court each and every time

any DDSN participant experienced an episode of abuse or neglect at any point in the future. There is no basis in law or fact for such a proposition. Assuming that Harrison was correct that Lacy was responsible for tracking abuse, neglect, and exploitation in DDSN programs, she has still failed to present any evidence showing Lacy's actions had any sort of causal connection to the damages alleged here. This clear example of failure to reasonably pursue a viable claim against specific defendants such as Lacy evidences unreasonable multiplication of litigation in this action. Counsel must have a good faith belief that Lacy's specific actions causally contributed to Plaintiff's injuries. The record is devoid of any such basis.

Butkus retired from DDSN in 2009—eight years prior to Valentine's death. Although the complaint alleged that Butkus conspired with others for the purpose of harming Valentine, engaged in a pattern of racketeering, and committed wire fraud, no discovery on this matter was pursued and no evidence was presented other than excerpts from a 2009 deposition in another case. As stated in the Summary Judgment Order, Plaintiff's substantive allegations relating to Valentine begin in 2010. Plaintiff never presented evidence connecting Butkus to any of Valentine's or Grate's alleged damages.

This lawsuit involved the abuse, mistreatment, and ultimate death of Valentine.[2] To argue that a deposition taken 8 years prior to Valentine's death can substantiate claims that

---

[2] Although Harrison avers that a wrongful death claim was never officially asserted in this federal action, she does admit that the complaint alleges the defendants' actions in this case contributed to Valentine's death.

the death was attributable to that particular defendant's individual actions is, to put it mildly, incredulous.

Moreover, this Court specifically stated that several defendants were not addressed in discovery or explicitly referenced by Plaintiff in the summary judgment stage. For instance, Kathy Lacy and Susan Beck were not mentioned a single time in Plaintiff's response to summary judgment motions. Numerous individual defendants, including Joshua Baker, Mary Poole, Patrick Maley, Lois Mole, Susan Beck, William Danielson, and Elaine Thena, are noticeably absent from Harrison's responses to the Show Cause Order and were not mentioned within her oral argument. Harrison's failure to even acknowledge these specific defendants after naming them in this action and having their presence brought to her attention shows that their inclusion in this lawsuit was vexatious and the claims against them frivolous. Their forced participation in this years-long suit is an unreasonable multiplication of litigation.

Additionally, as this Court has previously held in this action, Harrison's targeted attempts to depose the current and sitting Governor of South Carolina can only be seen as attempts to annoy, harass, or embarrass. (ECF No. 196). Harrison repeatedly defends her actions by stating that under a theory of supervisory liability, there is no duty to show an official's knowledge of any specific plaintiff or damages. However, Harrison overlooks that a critical element for a supervisory liability claim is that "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Although it has been recognized that supervisory liability can extend "to the highest levels of state

government," the Fourth Circuit has "noted that liability ultimately is determined by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Despite Harrison's assertions, the Fourth Circuit has previously held that the South Carolina Governor does not have responsibility for the types of claims asserted here. In *Kobe v. Haley*, a case repeatedly cited by Harrison as support for her continued pursuit of the Governors, the Fourth Circuit stated that "[w]hat Appellants[3] fail to appreciate, however, is that Governor Haley is not an official with responsibility for these decisions, nor does she have the authority to change them. South Carolina has designated DHHS to administer and supervise Medicaid." *Kobe v. Haley*, 666 F. App'x 281, 299 (4th Cir. 2016). Armed with knowledge of this authority, Harrison had a duty to name and pursue litigation against defendants who plausibly had a causal connection to the damages alleged here. Apart from naming various defendants, Harrison did nothing to advance her client's case.

Harrison failed to depose any defendant, except for William Barfield.[4] She pursued no written discovery in the federal litigation. Her failure to even attempt to pinpoint the individuals in the decision-making chain whose indifference permitted the abuses to Valentine is clear evidence that numerous defendants, including the Governors, were vexatiously pursued in this case.

---

[3] Harrison represented the Appellants in this action.

[4] Harrison also deposed Diane Anderson but in the parallel state court action.

8

Harrison's colloquy with the Court at the show cause hearing further demonstrates the vexatious nature of Plaintiff's allegations.

> THE COURT: And I have no doubt whatsoever the case was probably worth [$300,000]. But with that being said, that doesn't mean that this federal case against these 16 people that were never deposed had any merit. That's my concern.
>
> MS. HARRISON: Your Honor, I stand on our record. The ADA - all we had to prove was that she was a disabled person, that she didn't want to be there, and that the state said -- the burden shifted to the other side. That's something the Court has never acknowledged. The burden then shifted to them.[5]
> (ECF No. 319, p. 22).

Under this reasoning, Harrison may assert a lawsuit against any single person (or 18 persons, as is the case here) she so desires by merely alleging that the plaintiff made a request to be in a less restrictive setting while receiving Medicaid funds. Thereafter, the burden is shifted to that defendant, regardless of connection to the plaintiff, thereby mystically transforming the claim into a meritorious one. Not so. Harrison had a duty to allege causes of action only against individuals she had a reasonably good faith belief could be liable for Valentine's damages. She is not allowed to blindly cast blame and pursue litigation without ever attempting to assign liability to any specific one of the numerous individual defendants. This "shoot first, ask questions later" strategy is prohibited by Rule 11 of the Federal Rules—especially when there is a failure to ever ask the questions.

In further response to the Court's criticism on the lack of discovery performed in this matter, Harrison avers that she was barred from taking certain depositions and

---

[5] Harrison repeatedly refers to "they" or "them" in lieu of referencing specific defendants throughout her responses. Such vague arguments hardly counter the Court's concern that Harrison failed to pursue these defendants based on their own individual actions.

threatened with sanctions if she deposed certain other defendants. To be clear, the Court did indeed bar Plaintiff from deposing the Governors. Moreover, Plaintiffs were barred from deposing non-party Mary Poole and Defendant Baker. However, Plaintiff was prevented from deposing Poole and Baker only after Harrison failed to adequately respond to their motions for a protective order. (ECF No. 187, p. 4) ("[T]his court agrees that by failing to respond as ordered, Plaintiffs have failed to carry their burden in establishing that Baker and Poole should be required to sit for a deposition."). Moreover, this Court did limit Plaintiff's attempt to depose Robert Kerr, Thomas Waring, Christian Soura, and non-party Gary Lemel by ordering that:

> Plaintiffs' counsel must restrict the deposition questioning only to those matters which relate to the subject matter of this lawsuit — i.e. those matters which Plaintiff's counsel can readily articulate relation to injuries sustained by and damages sought from Latoya Valentine and Debra Grate. Plaintiffs' counsel is reminded that this lawsuit is not brought on behalf of all possible South Carolina recipients of Medicaid benefits or taxpayers in general. Deposition questioning should reflect the individualized search for facts specifically relevant to the individual plaintiff's claims and not a crusade for nefarious dealings at large.

> Although this court has complete confidence in each attorney's ability to comply with the Federal Rules and this court's orders, Plaintiffs' counsel is advised that failure to comply with the directives herein shall be deemed to be a violation of a court order and shall subject the violator to sanctions.
> ***
> Again, this request that Plaintiffs' counsel only attempt to elicit relevant testimony from Defendants by way of deposition should not need enforcement by formal order. However, out of an abundance of caution, Plaintiffs' counsel is ordered to restrict the deposition questioning only to those matters which relate to the subject matter of this lawsuit — i.e. those matters which Plaintiff's counsel can readily articulate relation to injuries sustained by and damages sought from Latoya Valentine and Debra Grate.

(ECF No. 153, p. 10-11, 13); *see also* (ECF No. 167).

The limitation on Plaintiff's deposition attempts were mandated by the Federal Rules of Civil Procedure and not a threat from this Court to sanction proper discovery attempts. Harrison's failure to pursue legitimate discovery efforts cannot be used as a defense here.

Plaintiff was allowed to pursue depositions within the confines of the Federal Rules. Moreover, at no time was Plaintiff prevented from pursing written discovery (i.e., interrogatories, requests for production, requests to admits, etc.) from any defendants. However, she failed to conduct such basic discovery. The only prohibition on depositions came after Plaintiff's failure to respond as to two defendants and a finding that targeted attempts to depose the Governors were attempts to embarrass, harass or annoy. Moreover, other depositions were limited, but only to matters which Plaintiff's counsel could readily articulate relation to damages sustained by Valentine and Grate. The fact that Harrison chose not to take these depositions for fear of sanctions shows that she intended to pursue claims against these defendants for reasons other than their relation to the specific damages alleged here. Because these defendants were named and targeted for actions that had no causal relation to Valentine or Grate's claims, their inclusion here has vexatiously multiplied the proceedings.

Throughout this litigation, the Court noted repeatedly that Harrison, despite making serious allegations of wrongful acts, continually failed to establish causal connections to many specific defendants. Despite naming 23 defendants in this action, Harrison failed to prevent the dismissal of 22 defendants. To be sure, the filing of a claim that may not

ultimately be successful is itself not deserving of sanctions. However, that is not the situation here. In this action, Harrison filed multiple complaints containing a litany of serious allegations against a slew of defendants. She then intentionally failed to pursue discovery or otherwise attempt to prove these allegations. Specifically, within the Summary Judgment Order, the Court noted:

> Simply put, Plaintiff has presented no evidence of an enterprise or that Thena and Owens were employed by or associated with an enterprise carrying out a pattern of racketeering activity. Plaintiff fails to address the RICO argument in her response and has thus failed to present a genuine issue of material fact. Thus, all RICO claims as to these defendants must be dismissed.

(ECF No. 273, p. 45).

> These defendants assert that there is no evidence Baker or Soura ever participated in a conspiracy. The Court agrees that Plaintiff has failed to set forth any evidence to support these allegations. Plaintiff has failed to allege any specific actions or facts showing the "who, what, where, when or why" of any alleged conspiracy. Plaintiff has only set forth broad allegations of misdeeds which have gone unsubstantiated. Additionally, a vital element of any § 1985 claim is that the defendant must be motivated by a specific class-based invidiously discriminatory animus. Plaintiff has offered no evidence to support this element other than merely reciting it within their briefs.

(ECF No. 273, p. 55-56).

> These defendants also assert that the RICO allegations against them should be dismissed for several reasons including that there is no evidence of any predicate acts, an enterprise, or that Soura or Baker were employed by or associated with the enterprise carrying out a pattern of racketeering activity. This Court agrees. Plaintiff failed to present any evidence of predicate acts. Plaintiff is not aware of any racketeering by any defendant in this case. As stated above, Plaintiff's vague allegations fail to identify the "who, what, where, when or why" needed to create a genuine issue of material fact. In support of this argument, these defendants quote Plaintiff's responses to their interrogatories. These responses (ECF No. 205-6) evidence Plaintiff's complete failure to identify any specific actions taken by these defendants. Plaintiff's responses make clear that they have no evidence of

any relevant actions taken by Baker or Soura and Plaintiff failed to conduct any discovery in this action which would substantiate these claims. Quite simply, Plaintiff made severe allegations, including obstruction of justice and witness tampering, of vague conduct purportedly undertaken by various defendants. After that, however, Plaintiff failed to substantiate these allegations and instead relied on unsupported assertions arising out of a failure to properly spend funds allocated by the General Assembly. Despite this, Plaintiff asks the Court to let her proceed with litigation without ever attempting to argue a causal connection exists between prior funding problems and Valentine's injuries. The Court declines such an invitation.

(ECF No. 273, p. 56-57).

This Court agrees that Plaintiff has utterly failed to connect any of the above defendants to any injuries actually suffered by Valentine or alleged by Grate.

(ECF No. 273, p 61).

These defendants also noted in their Reply that "Defendants Kathi Lacy and Susan Beck, who have been Defendants in this case for almost three years, are not even mentioned by name [in Plaintiff's Response]." (ECF No. 235, p. 6).

(ECF No. 273, p. 61, n. 35)[6].

This type of conduct has readily been found sanctionable. *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 550 (4th Cir. 1990) ("This case is not one of a district court sanctioning attorneys and their clients for forwarding novel legal claims. Rather, it is a case in which a district court imposed sanctions because the parties and counsel pressed on a massive scale insubstantial claims unsupported by any credible evidence.").

---

[6] The quotations above are simply examples of the most egregious failures to support Plaintiff's allegations. In all, the Court utilized the phrase "no evidence" over 50 times in the order granting summary judgment to more than 20 defendants. Thus, it is clear Harrison unreasonably multiplied this litigation by vexatiously naming defendants she never intended to seriously show had a causal connection to Valentine and Grate.

Additionally, Harrison completely failed to respond to several of this Court's concerns of unnecessary multiplication including: filing superfluous motions to reconsider (ECF No. 288, p. 32); duplicating federal claims by filing a parallel state court action containing the exact same claims (ECF No. 288, p. 34); and naming duplicative parties such as Mary Poole and the State of South Carolina (ECF No. 288, p. 27).

Accordingly, Harrison has failed to show why she should not be sanctioned for the vexatious multiplication of litigation and the continued pursuit of frivolous claims. For the reasons discussed above, specifically, naming numerous individual defendants that had no causal connection to Plaintiff's damages, Harrison has violated Rule 11 of the Federal Rules and is therefore subject to sanctions.

### 2.    Unsupported Cause of Death Claims

This Court also raised specific concerns over Harrison's assertion and continued pursuit of the theory that actions of the defendants in this matter contributed to Valentine's death. Specifically, Plaintiff avers that Valentine's death was caused by a previously diagnosed condition, hyponatremia, which resulted in low sodium levels. The complaints in this action claim that Valentine lost consciousness in the shower due to hyponatremia and fell striking her head on the toilet. Plaintiff asserted that this traumatic head injury actually caused Valentine's death. However, Plaintiff offered no evidence to substantiate these claims and defendants were awarded summary judgment on this issue.

In her briefing and at oral argument, Harrison avers that she presented evidence that could lead a reasonable juror to believe hyponatremia contributed to Valentine's death. However, as stated in the Summary Judgment Order, Plaintiff presented no such evidence.

14

Further, Harrison's attempt to point to a lack of evidence by the defendants did not withstand a challenge at the summary judgment phase and is likewise unavailing here.[7]

Harrison avers that she spent hours reviewing medical records and speaking to medical professionals regarding Valentine's medical condition. The record is devoid of any documentation or medical professional testimony which supports Plaintiff's position. Harrison identified no experts in this matter. Harrison attempted to solely rely on alleged inconsistencies in the relevant EMS records and coroner's report. However, a review of the emergency room records, coroner's report, EMS records, and death certificate all indicate that Valentine's cause of death was not a traumatic head injury, let alone one caused by low sodium levels. At no time did Harrison offer any evidence that Valentine's death resulted from a traumatic head injury.

Further, even if a head injury did cause Valentine's death, Harrison presented no evidence that her fall in the shower resulted from hyponatremia. Therefore, despite Harrison's supposed beliefs, there was simply no evidence presented or obtained that substantiated Plaintiff's hyponatremia theory. Thus, Harrison violated Rule 11's mandate that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See also Blue v. U.S. Dep't of Army*, 914 F.2d 525, 542 (4th Cir. 1990)(upholding sanctions where "the district court found that if counsel had made a

---

[7] Harrison further attempted to cast doubt on the coroner's report by asserting that the coroner was investigated for having sexual relations in his office several years after Valentine's death. Such a statement has no relevance to the claims before the Court and in no way helps Plaintiff show Valentine's cause of death.

reasonable investigation of their clients' claims or a reasonable inquiry into the materials handed over to them in discovery, they would have realized that they had no credible evidence []. This counsel did not do.").

Moreover, Harrison's attempt to bolster this theory by offering affidavits from Grate after the Court issued the Show Cause Order is unavailing. (ECF No. 303-2). During her deposition, Grate specifically testified that she had no knowledge as to Valentine's death and she was not present during the fall. Thereafter, Harrison did nothing to substantiate the claims in the complaint. Grate's untimely affidavit offers no validation to Harrison's discredited cause of death allegations. Although it is conceivable that Harrison may have been justified in asserting the claims in the complaint,[8] her continued pursuit of these claims to and through the summary judgment phase violates the requirements of Rule 11. *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 537 (4th Cir. 1990) ("Sanctions are appropriate for pursuing a case after it becomes clear that the case is without merit."). Such actions cannot be condoned. *Id.* ("Counsel was found to have shirked its responsibility to explore the factual bases for the clients' suits and to examine the materials obtained in discovery, instead charging forward with the litigation in disregard of its manifest lack of merit. Such conduct cannot be condoned.").

Additionally, Harrison argues that her claims regarding Valentine's death must have had merit given that 25% of the $300,000 settlement was apportioned to her state law claim

---

[8] "A plaintiff's ability to meet this low threshold does not render sanctions inappropriate for the continued litigation of an otherwise patently frivolous case." *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 536 (4th Cir. 1990).

for wrongful death.[9] The Court finds this argument unavailing for several reasons. First, the defendants agreed not to contest any proposed apportionment of the settlement amount in state court as part of the settlement agreement. (ECF No. 278-2). Accordingly, Harrison was free to apportion the settlement funds anyway she saw fit in her petition to the state court with no objection from opposing counsel. Apart from Valentine's death, Plaintiff alleged that Valentine was physically abused over the course of several years including suffering human bites, having her hair pulled, incurring burns from a cigarette, being forced to walk a track with injured feet, being slapped in the face, and having her arm twisted behind her back before being drug into a bathroom by her hair. In the undersigned's experience, these allegations fully support a $300,000 settlement for patient abuse claims without allegations of wrongful death. The fact that Harrison apportioned a percentage of the settlement to the state wrongful death claim is therefore unpersuasive.

Additionally, the Court is not blind to the fact that parties often agree to pay some funds in settlement of claims they believe to be meritless to avoid further litigation. Indeed, the defendants here paid a single lump sum to settle all claims, including those previously dismissed, both state and federal, including appeal rights. Harrison emphasizes that she brought a wrongful death claim in the parallel state court action and therefore the portion of settlement proceeds assigned to Valentine's death should not be a consideration of this

---

[9] As explained earlier, Plaintiff split the claims arising out of Valentine's treatment by the defendants into separate lawsuits proceeding on two parallel tracks: (1) claims asserted in state court for abuse and wrongful death, and (2) the somewhat interrelated federal claims asserted in the litigation before this Court. Both the state and federal cases settled simultaneously during mediation for a single sum of $300,000.

court. However, within her briefs, Harrison readily admits that she was seeking damages in this federal action, in part, resulting from Valentine's death. (ECF No. 303, p. 10 n.9)("As argued in this Court, the failure to provide Plaintiff with relevant and critical health information and services contributed to decedent's death.").

Thus, settlement of a full lawsuit does not retroactively provide merit to a claim the Court has definitively disposed of in prior summary judgment proceedings. Here, the Court granted summary judgment on the issue of Valentine's death by finding that Plaintiff had failed to carry her burden of proving hyponatremia contributed to Valentine's death. The fact that defendants later agreed to a full settlement of the case, of which a wrongful death claim was included, does not justify Harrison's actions here.

It bears mention that a large portion of Harrison's arguments, both in briefing and at the hearing, relate to her legal career[10] and work performed in other actions. For instance, Harrison recounted a time wherein she led a group of advocates to meet a representative in Washington D.C. She also spends much time referencing bad actions of various state agents and harping on the financial mismanagement of legislative funds. These are the exact same allegations of "nefarious dealings at large" that this Court has repeatedly found had no connection to the specific damages, namely Valentine's death, alleged in this case.

---

[10] Despite this Court's admonitions against Harrison repeatedly attaching irrelevant exhibits to her filings with no citation thereto, Harrison untimely filed an affidavit from Deborah McPherson ostensibly to support her response to the Show Cause Order. (ECF No. 304). McPherson has no personal knowledge of the actions giving rise to Grate or Valentine's claims and her affidavit served no useful purpose.

Harrison further attempted to obfuscate the proceedings against her by averring that opposing counsel should be blamed for vexatious litigation tactics. All of these arguments simply have no merit or relevance to the instant proceedings. The Show Cause Order was issued to consider sanctions against Harrison for her specific actions undertaken in this specific lawsuit. Her responses show a continuing failure to consider the ramifications of her actions, the unnecessary detriments they cause, and their failure to advance her client's position.

Accordingly, attorney Harrison must be sanctioned.[11]

## IV.    SANCTIONS

The authority cited in the Show Cause Order grants this Court wide discretion in fashioning appropriate sanctions. Here, the undersigned finds it appropriate to: (1) issue a formal written admonishment in the form of this order; and (2) require Harrison to obtain continuing legal education credits in certain subjects over and above those required by the South Carolina Bar. *See Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002)("A court may, for example, strike a document, admonish a lawyer, require the lawyer to undergo education, or refer an allegation to appropriate disciplinary authorities."). As explained below, the Court declines to issue monetary sanctions even though Harrison's actions fully support such an award.

---

[11] The Court would note that either of the two grounds addressed in this order and the Show Cause Order would fully support the issuance of the sanctions below even if considered in isolation.

A.  Written Admonishment

This Court does not deny that this lawsuit, in general, contained some level of merit sufficient to warrant the filing of an action. However, instead of carefully crafting this action to assert specific claims against specific potentially liable actors as required, Harrison employed a shotgun approach seeking to cast blame on any official within sight. She then engaged on a campaign of inundating the Court and opposing counsel with irrelevant filings and vague allegations of bad acts. All the while, Harrison failed to pursue discovery specific to her clients and claims in this action. Such tactics simply cannot be condoned. Harrison had an obligation to ensure that each allegation was asserted against each individual defendant in good faith. Each individual named in this lawsuit must be judged on his or her specific actions in relation to the damages alleged. Harrison ignored this directive and instead named over a dozen individuals who had absolutely no knowledge of or relation to the specific events alleged.

This Court has no doubt that Harrison's actions are fueled by an innate desire to effectuate change in a system she sees as broken, corrupt, and in need of a complete overhaul. However, her fervor for change has blinded her to the fact that these lawsuits must not be pursued without just cause and in violation of the federal rules. The morals of her crusades may be noble, but the chosen methods of warfare are untenable.

B.  Educational Courses

Although Harrison avers that she is in the top 1% of attorneys in this state with over 30 years of experience (ECF No. 312, p. 2), her failure to follow fundamental tenets of proper litigation evidence a need to refresh her knowledge of the basics. Accordingly,

Harrison is ordered to obtain at least 20 hours[12] of continuing legal education courses approved by the South Carolina Bar in one or more of the following subject areas: Ethics/Professional Responsibility; Legal Writing; Litigation/Trial Practice; Civil Rights Law; or Constitutional Law.[13] Harrison will have two years from the date of this order to complete these courses.

C. Monetary Sanctions

Although the undersigned believes that Harrison's actions are fully supportive of monetary sanctions, the Court is also mindful that the power to levy monetary sanctions is not unbridled. A court must not impose monetary sanctions under Rule 11 "on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned." Fed. R. Civ. P. 11(c)(5). Here, the Show Cause Order was issued after the case was resolved at mediation. Thus, monetary sanctions pursuant to Rule 11 are inappropriate.

The court may impose monetary sanctions according to its inherent powers. However, "[b]ecasue of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

---

[12] These 20 hours must be over and above any requirements already imposed by the South Carolina Bar.

[13] Courses in each of these subject areas can be found through the South Carolina Bar at https://cle.scbar.org/Practice-Area.

Further, 28 U.S.C. § 1927 states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." However, an "award of costs, expenses, and attorney's fees pursuant to § 1927 is compensatory in nature—not punitive." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018). "It requires the court to show a causal link between wrongful conduct and an unreasonable and vexatious multiplication of proceedings, then to connect the costs wrongfully incurred as a result of the sanctioned attorney's conduct to the amount awarded to the moving party." *Id.*

Here, two sets of attorneys have requested fees as a possible sanction for Harrison's conduct: Davidson, Wren & DeMasters, P.A., who represents Governors Haley and McMaster, The Office of the Governor, the Department of Disabilities and Special Needs, Robert Kerr, Patrick Maley, Lois Park Mole, Susan Beck, Beverly Buscemi, Kathi Lacy, William Barfield, Thomas Waring, William Danielson, and Stanley Butkus; and Riley Pope and Laney, who represents the Department of Health and Human Services, Joshua Baker, and Christian Soura. Riley Pope and Laney submitted an itemized statement of fees totaling $9,135.00 and Davidson, Wren & DeMasters, P.A. seeks compensation totaling $63,553.00.

Although the Court has little doubt that most, if not all, of these fees can reasonably be attributed to sanctionable conduct, the record before the Court is not sufficient to warrant monetary sanctions. The crux of the Order to Show cause focused on the inclusion of unnecessary individual defendants and pursuit of claims premised on Valentine's death.

The attorneys above represented both individual defendants and state agencies named in several separate claims throughout these proceedings. The time entries submitted by the parties do not allow the Court to determine which fees were incurred on behalf of which particular defendant in defense of which particular claims. Although a portion of each fee is no doubt attributable to an aggrieved defendant, the Court feels it unwise to speculate as to which portion or percentage of the claimed fees can be attributed solely to wrongful conduct. The Court is mindful that a "request for attorney's fees should not result in a second major litigation" *Doe v. Kidd*, 656 F. App'x 643, 658 (4th Cir. 2016)(cleaned up). Accordingly, the Court declines to delve further into the fee requests in an attempt to decipher the precise portions of fees having a causal link to Harrison's conduct.[14] Moreover, the Court is loath to expose the defense attorneys and their clients in this action to any continued discovery in a matter which has long been settled.

The Court is satisfied that the formal sanctions issued above will act to deter similar future abuses.

## V.    CONCLUSION

It is regrettable that an attorney, although driven by commendable admirations, has chosen to wreak such unnecessary havoc via the judicial process. Such conduct is subject to sanctions pursuant to Federal Rule of Civil Produce 11, the inherent authority of the

---

[14] The Court finds Harrison's assertions that she would need to at least 6 months to conduct discovery as to each attorney's billing practices in this matter to be farcical given that it would result in exponentially more discovery than she cared to perform on the merits of this case. However, some discovery may be warranted, and the Court sees no need to allow this matter to linger on when other sanctions are available to curb Harrison's abuses.

court, and 28 U.S.C. § 1927. Thus, the detrimental actions taken here may not be allowed to proceed unchecked. Accordingly, it is ordered that Patricia Harrison be sanctioned for her conduct in this action as outlined above.

Upon docketing this order, the Clerk of Court is ordered to additionally append the Show Cause Order (ECF No. 288) thereto to ensure the entirety of the Court's reasoning on this matter is included in a single filing.

IT IS SO ORDERED.

March 29, 2022                              Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge